Good morning, Your Honors. May it please the Court, I'm Albert Cheng on behalf of the Attendant, Mr. Arduini. Let me just ask one question. Don't start the clock yet. I just have a question. I see two people at counsel table for IGT. Are you both going to argue, or is just one of you going to argue? No, we're going to argue. OK, because you have to share your time if you're both going to argue, so I wanted to make sure you knew that. Bringing more people doesn't give you extra 15 minutes, but all right, then we'll go back and start. OK, thank you. Thank you, Your Honors. It is basic principle of American law that a judgment in a lawsuit does not decide the rights of a non-party. The United States Supreme Court has, in case after case, upheld this principle. In 1940, in Hensbury v. Lee. In 1985, in Phillips Petroleum Company v. Schutz. And more recently, in 2008, in Taylor v. Sturgill. This appeal seeks to vindicate Mr. Arduini's right as an IGT shareholder to bring a derivative lawsuit, even though a previous shareholder in a previous case was found to lack particularity in his pleadings in alleging demand futility. Excuse me. Well, a derivative lawsuit is a little bit different than other lawsuits, per se. And so, and the demand futility issue was litigated, whether this was luck or not luck for you, it was the same judge the whole way through, correct? And so the same judge had handled the other cases with four additional plaintiffs that were bringing derivative lawsuits. And they had four different counsel as well. So it was pretty vigorously presented. So why should every single shareholder be able to bring another suit and claim demand futility? Because in the context of shareholder derivative litigation, there are two steps. And Delaware law is clear on this point. The first step in Aronson v. Lewis. And the court said in that case that first, it is equivalent of a suit by the shareholder to compel the corporation to sue. Unless and until the shareholder gets through this 23.1 obstacle, the shareholder does not bind other shareholders or the corporation. The Piatt one case decided to do that. But this is Nevada law, right? This is Nevada law. But in the Schoen case that we cited from the Nevada Supreme Court, the Nevada Supreme Court held that Delaware law is highly applicable in the context of Nevada's corporation law. So do we really know what Nevada law is on this issue? Or is this something that should be certified to the Nevada Supreme Court? We don't think this court needs to. Because Nevada law looks to Delaware law. Delaware law is crystal clear on this point. That there are two steps. The first step is the shareholder's right to establish demand fertility or establish that a demand is wrongfully refused to bring a lawsuit on behalf of a corporation. The previous lawsuit in the Fosber plaintiffs failed to overcome this obstacle. So the Fosber plaintiffs' judgment cannot be applied to Mr. Arduin. I don't understand that. Well, because they lost, they litigated the point and lost, other other shareholders can bring the same suit and relitigate it? Yes, because they lost and they failed to establish that they were the adequate representative of the corporation and the adequate representative. You mean if they lose, they're inadequate in their representation? Yes, because they fail to allege sufficient facts to demonstrate that demand is futile. And not a shareholder's right to establish that a demand is wrongfully refused to bring a lawsuit on behalf of a corporation. Well, but they were, those plaintiffs were saying, doing a similar attack on the board that your client was doing in terms of that they were, you know, claiming certain improprieties with the board members and they were at the exact same board members and they were saying the exact same things, basically. Sure, but different plaintiffs can allege different facts. Well, you can always find some little bit, you know, everything in terms of when you're saying people are impredity. But it sure looks, it's sort of like it quacks like a duck and walks like a duck, it's a duck. And these, they seem to be alleging the same problems with the same board. Well, let's use an extreme example. Say one shareholder brings a shareholder derivative lawsuit alleging in one paragraph that demand is futile because I say so. And then two years, one month later, another shareholder brings a lawsuit alleging 100 paragraphs of demand, factually particularized demand for fertility allegation. Can the question here is whether a company can go to the first shareholder, obtain a judgment saying that demand was not excused, and then use that judgment to bind the second shareholder who brought the suit. Our position is that we cannot. And this principle is recognized in the second suit. Regardless of whether the first shareholder were adequately represented? That's irrelevant? That's not irrelevant, but that goes as part of the privity analysis. Our position is that unless this fundamental precept under Delaware law, that unless and until a shareholder adequately demonstrates the first step that he is entitled to bring a lawsuit on behalf of a corporation, this shareholder is not in privity with other shareholders. And that judgment cannot bind the corporation nor other shareholders. Who makes that determination, that the shareholder is, quote, adequate to bring a derivative action? The trial court in the trial court in this case, the trial court decides whether the allegations in the complaint satisfy Rule 23.1. That judge decides whether the first shareholder What case is that? It usually in these kind of cases, the motion to dismiss is brought in every complaint that is filed, so the trial court decides whether a certain complaint would pass the 23.1 muster. What case is that? I'm sorry, I'm not understanding your question. Well, you're talking about the procedure in the district court that would, you said there's a step that must be had before the shareholder is deemed to be able to bring a derivative suit. Yes. Rule 23.1 in a Federal procedure, in many States procedures, says that a shareholder bringing a derivative lawsuit must allege with particularized facts why the man is futile. So in – and there's a body of Delaware law deciding what set of facts or what kind of particularized facts is necessary to overcome that hurdle. And in Aronson, the Aronson I'm quoting said that it is – the first step is equivalent of a lawsuit by the shareholder to compel the corporation to sue. I guess to answer your question, yes, Aronson says that. And the Second Circuit case in Papilsky in 1972 also recognizes this two-step analysis. We also cited a G case from the District of Rhode Island and the first energy case from the Northern District of Ohio. Both cases held squarely that one shareholder is not in privity with another. Well, let me ask you this, okay? Are you contending that on the – your demand for utility, are you contending as one basis that allegations that director interest based on director's approval of the revised employment agreement for the former CEO Matthews is a problem? Are you contending that as one of it? Yes, we are. Okay. Are you contending allegations of director interest based on high director compensation as the director's receipt of compensation alone does not excuse – are you claiming high director compensation? Yes, we are. Okay. Are you contending certain director's membership on the IGT's audit and governance committee supported demand for utility? Are you contending that? Yes, we are, Your Honor. Okay. Are you contending that the insider director's employment with IGT supported a finding of demand for utility? Yes, we are. Are you contending that the alleged insider trading by IGT directors Burt, Bittman, and Matthews support demand utility? Yes, we are. All right. And all of that happened in the prior. The court ruled against you. All of those issues were handled. Do you dispute that? No, we do not. All right. And you lost – and they lost on the – that was appealed to the Ninth Circuit. And so tell me why you're not – why it's not – all those issues haven't been decided. Well, two reasons. First, we have additional facts in our complaint. First – What's your additional fact? There are two lines of facts. The first lines of facts is that the securities fraud case – the complaint in the securities fraud case was upheld under the stringent pleading standards of the PSRRA. And even after the complaint was upheld, the IGT board failed to prosecute the wrongdoers who allegedly committed securities fraud. And in that case, actually, at the end of the day, settled for $12.5 million damaging the corporation, but not even a single action was filed. The second set of facts that the district court did not adjudicate in the Fosbur case was the repurchase of – the IGT's repurchase of $777 million of its own stock when the stock price was inflated. Those facts were alleged in the Fosbur complaint, but it was not decided in the Fosbur case. And – They were alleged in there, and the decision was aware of that, and it still didn't find demand futility, right? The opinion did not even mention the repurchase allegations. And as Your Honors know, demand futility should be adjudicated on facts – on a case-by-case basis and view all the demand futility allegations must be viewed as a whole. And so we believe that our complaint should be looked at with a fresh pair of eyes. And – So you're saying you're making distinctions that have a difference, and they're going to tell me that these are distinctions without a difference. You can always add a fact. You can always add a fact, or you can say a fact differently. That's right. But under Nevada law, issue identity must be exact. And in a five-star case, the Nevada Supreme Court compared between claim preclusion and issue preclusion. On claim preclusion, the Nevada Supreme Court says that claim preclusion bars all litigation of all the issues that – Do you want to save some time for rebuttal? Because they're going to talk for 15 minutes. Yes.  Thank you. Good morning. Good morning. I'm Boris Feldman for the Appellees. My partner, David Stoyer, is here. He's an alum of this court in a way. He clerked for Judge Choi many years ago. I do not represent anyone named Singh. So this case – Okay. So it's not in privity with the Singhs today. Yes. Correct. So aloha. Thank you. All right. Maybe, you know, I think we've kind of framed the issues here a little bit. So maybe you can kind of address my points in terms of that does it need to be certified to the Nevada Supreme Court? Is – can – you know, when we're talking exact, lawyers can always make – they can change a word. So what are the things that the appellant is alleging? Are they, you know, distinctions without a difference? Or what – you know, what's the standard here? I will, Your Honor, in that order. So to the first one, we agree with the appellant that there's no need to certify this to the Nevada Supreme Court. The law is actually quite settled here, and I think this Court has used certification sparingly. Is there any State that varies materially from standard in Delaware? No. As to the substantive rules on demand futility, some States are harsher on the plaintiffs in Delaware. Nevada is, for example. But in terms of the issue preclusion rules, even though the different States may frame them a little differently, for purposes of this appeal, they're the same. So I think if you were to certify this to the Nevada Supreme Court, they might say, we don't understand what the issue is here. As to the second point, whether there are differences here that matter, I think counsel may have gone on something of a detour when he talked about the adequacy of the derivative plaintiff, and Your Honor asked him whether there's a decision about that. There are many cases in shareholder law where the Court does look to the plaintiffs. Demand futility is one of the pure ones where the Court does not. Whether or not the defendants are such that demand would have been futile has literally nothing to do with who the plaintiff is. It doesn't matter at all. Demand futility analysis under the law of any State only looks to who the board is and what their relationships are. Now, counsel said, ah, but the decision can't be binding on other shareholders until you've gotten past the demand futility stage, and the Court has determined that the shareholder is adequate to run the derivative suit. And again, Judge Pratt said, where do you get that? And he said the Pyatt case, but it was reversed. Well, let me ask you this, though. If a shareholder is bringing a lawsuit over a different action by the board, you're still looking at the board, but then the board's relationships and whether they have conflict, you know, whether they should be recusing themselves would be different depending on what the facts are, right? Absolutely. It would vary. It would not be the same claim. So for example, in the Second Circuit decision that Appellant relies on in his brief, the first suit was about one year's proxy statement, and the later lawsuit was about a different year's. And the Second Circuit said, no, no, get out of here. So is there any difference in the claim here? No, it's identical. All right. When the Appellant comes back, is he going to say there's any difference? No. I don't think so. No, they were identical. He says that we had a better argument on demand futility, but the underlying claims for breach of fiduciary duty are the same. And they all concern the exact same events. Same events, in fact. The same events that six judges of this Court have already ruled on in Fosbury, which when it was decided was then called Israni, because as Your Honor pointed out, that derivative suit was actually four suits that were consolidated. There were actually a dozen different plaintiff's firms on it. If you look at Excerpts of Record, page 72. So I underestimated it. It goes on and on. It does. And so in that case, Judges Hugg, Kleinfeld, and Fletcher, the younger, affirmed Judge Reed's dismissal. And then there was yet another derivative suit brought. That was the Sprando case. The late Judge Reed also dismissed that. And then this Court, Judges Clifton, Bea, and District Judge Corman, sitting by designation, also affirmed that dismissal. So today, the Arduni case, it's sort of your classic whack-a-mole, and it underscores the need for issue preclusion in some of these. But to Your Honor's question, no. If a different shareholder came forward and said, I have a claim against the IGT Board unrelated to these events, no, the finding here on demand futility would not be issue preclusive there. But when you keep having the same derivative lawsuit again and again, then you can't keep relitigating. And one way of seeing that is to put the shoe on the other foot. Let's say in the initial case, Fosbury, Judge Reed had said, you've gotten past demand futility. And then for whatever reason, the case went away. For example, let's say the plaintiff sold his IGT stock, which would have deprived him of derivative standing. Then this plaintiff could have come in and tagged on to that earlier finding of demand futility, and we would have been stuck with it. Mr. Feldman, you've helped me by saying what we should be looking at is what the Board of Directors did. Is that what your claim is? No. What I'm saying is that the demand futility issue depends on the composition of the Board, not on the identity of the Board. Okay. I want to ask you about SONUS and what the Judge Gibson says there. The adequacy of representation is what I'm interested in. He says, you know, you can't have – and here, as I understand the facts, what happened is the district court, Judge Reed, gave leave to amend, but there was no amendment. And so isn't the appellant here claiming that that shows an inadequacy of representation? That's my understanding of his argument. Your understanding is correct. All right. The problem with the argument is it wasn't made below. It's waived. If they had wanted – if appellant had wanted to argue before Judge Reed that he should not follow the decision in Fosbury because the dozen law firms in Fosbury weren't adequate representation, then he should have made that below. But having not made that, he can't raise it here. And in any event, you have the luxury here of having the same judge. Not only are you in the same court, so it isn't a federal-state situation as in SONUS. It's all in federal court. It's in front of the same federal judge. So he was in a good position that if they had made that argument below and said, well, you know, Your Honor, you offered to let him amend and they didn't, then he could – he would have been in a good position to evaluate whether that reflected due process level inadequacy. But in any event, there's nothing inadequate. Sometimes you bring a case and the judge throws it out. And instead of amending, you say, I think it was a pretty good complaint. I'm going to go up on appeal, which is what he did. It's not as if they had some type of procedural default that they failed to cure. He found the demand allegations inadequate. Presumably, they thought, well, we don't have anything more to allege. Let's go up on appeal. And they went up on appeal. It was fully litigated. If you pull from your files the briefs in that case, I am sure Your Honors have seen inadequate representation before. And this wasn't it. They were very well-regarded national plaintiffs' firms. They took it up on appeal and they lost. But in any event, you don't need to reach that because it wasn't made below. I think Judge Gibson's point is a valid one. In all the issue preclusion cases reflected, if you think there's some collusion going on in the prior case, then all bets are off. But this isn't that at all. It was all adversarial in arm's length. And then the final point I want to make, and then I'll return my time to Your Honor, a precious gift, time. The counsel said there are two new facts that came up. One was the decision in the class action. Again, you have the blessing that Judge Reed wrote that decision. In that argument they did make below, they said, well, no, all bets are off now because you didn't throw out the class action in Judge Reed. And one of the footnotes said, that has nothing to do with breach of fiduciary duty by the director, which is plainly right. It's totally separate cases. And then they said, well, we allege the repurchase. And I think perhaps as Judge Callahan reviewed, but there were repurchase allegations in the Fosbury complaint as well. Lawyers are generally very good at finding some little nugget that's new. But the truth is the heart of the demand futility allegation in the earlier appeal, Fosbury, which your Court called as Ronnie, was these directors got so much stock they couldn't possibly be independent for demand purposes. And that's sort of the core theory here, too. They made so much money as director. It's the same thing that he decided in Fosbury and that this Court affirmed on in his Ronnie. Thank you. Mr. Feldman, is this some, when you talked about the attention we should pay to Judge Reed being on all of these cases, this is probably obvious to everybody but me, but is this some kind of equitable doctrine, demand futility? I've never had it, so. I'm not following Your Honor. Okay. Well, is demand futility the concept? Is this an equitable concept? I mean, you've got me talking about what Judge Reed did and how we should pay attention to the fact that he was on all of these cases. Is that something that enters into the analysis or? No. If I suggested that, I withdraw it. I didn't mean to. Demand futility is statutory. Right. The whole notion of a derivative is equitable in nature but now codified by statute. Well, it's kind of almost an exhaustion requirement. It's just like you can't, you know, shareholders just, they can't bring it if they don't do it. It is. It actually, I don't mean to sound falsely patriotic, but it's a democratic issue. It's that the board has been elected by the shareholders. I assume that's small d. Yes. Yes. Before an individual can come and say, hey, I'm going to take over this corporate entitlement. It's why there's privity here. He didn't sue as Arduni seeking his own return. He sued in the name of IGT. And so that's why there's the privity element. Your point with respect to Judge Reed, I take it, is that he is, are you saying that he deserves some deference because he's familiar with what was litigated? No, it was a rhetorical point, not an analytical one. All right. Well, it wouldn't be legal deference, but the thing is, if you do all of the cases, you know what you did before, hopefully, if you are of sane mind, which we, like our judges, to be. So it's like if you've done every trial in the whole thing, you know what you decided in one and what you didn't. And also, too, you would be in a tougher spot if you were the appellant here because Judge Reed said, well, no, I didn't decide that in FOSBRE. Exactly, Your Honor. Okay. Thank you very much. Thanks. In Sonos, the First Circuit found that there was adequacy of representation between the first and second shareholders who brought suit. There is no waiver here because to establish issue preclusion as an affirmative defense, it is IGT's burden to establish privity and issue identity. The privity issue is intertwined with the adequacy of representation. In the Papilsky case in the Second Circuit, the Second Circuit refused to allow the first dismissal of a shareholder derivative action to bind the second shareholder derivative action because the first dismissal resulted from the first plaintiff's failure to answer interrogatories. The Second Circuit found that failure to answer interrogatories is inadequate. So when you look at our Court's decision in the prior litigation, you see a box this big of lawyers who were representing the plaintiffs. So is – doesn't your case depend on our saying that they were inadequate? No, because from – in our view, every derivative complaint should be looked at in and of itself without – unless and until one judge finds that this complaint passes a 23.1 threshold. The first complaint and the first judgment can never bind the second. Are you – are you disputing the fact that the claim that what – the lawsuit that your client wants to bring is the same lawsuit that was brought before? We are not disputing it. You're not disputing that. Are you disputing the legal proposition that it doesn't matter about the plaintiff, it matters about the board? We are disputing that to the extent that every shareholder is entitled to make his or her own demand-certificate allegations. For example, under Delaware Corporation's Code, Section 220, a shareholder is entitled to see inspection documents before filing the complaint. The presumption is that – So are you saying Delaware law stands for the proposition that your – your client, even if it – let's just assume hypothetically that you are saying the exact, exact, exact, just a carbon copy of what was litigated in Fosbury or Israni, are you saying that you – that issue preclusion can't come against you? Yes, I am. Because unless and until a shareholder in the first case passes the 23.1 threshold, that shareholder is not in privity with the second shareholder. So just because they have a different name, they're never in privity. That's the rule you're asking this Court to adopt. That's right. And what's your best case for that? My best case for it is the Aronson case from Delaware Supreme Court saying that there are two-step process. One is, first, for the shareholder to establish that demand is futile and he is entitled to bring a suit on behalf of the corporation. Okay. Unless my colleagues have additional questions, you're in overtime at this point, so we're going to conclude the hearing. All right. Thank you both. This case was well argued, and we appreciate both of your arguments, and this matter will stand submitted. Thank you.
judges: Pratt, Schroeder, Callahan